### TEXAS EMPLOYERS' INS. ASS'N v. CITY OF DALLAS. (No. 10072.)

Court of Civil Appeals of Texas. Dallas. March 31, 1928.

Rehearing Denied April 28, 1928.

**1. Taxation ⬤⟶217—As regards liability to taxation, Employers' Insurance Association, created to collect and distribute funds necessary to administration of Compensation Law, is not a governmental agency (Workmen's Compensation Law; Rev. St. 1925, art. 8308, § 1).**

As regards liability to taxation, the Texas Employers' Insurance Association, created by Rev. St. 1925, art. 8308, § 1, for the sole purpose of collecting and distributing funds necessary to the administration of the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), is not a governmental agency to perform governmental functions.

**2. Taxation ⬤⟶204(2)—Statute relative to exemption from taxation must be construed in light of constitutional grant of power (Rev. St. 1925, art. 7150; Const. art. 8, § 2).**

Rev. St. 1925, art. 7150, exempting certain property from taxation, must be construed in the light of the constitutional grant of power, that of Const. art. 8, § 2, under which it was enacted.

**3. Taxation ⬤⟶251—Burden is on one claiming exemption from taxation to bring himself clearly within exemption statutes.**

The burden is on one claiming exemption from taxation to bring himself clearly within the exemption statutes.

**4. Taxation ⬤⟶204(2)—Law granting exemption from taxation must be strictly construed.**

In considering a claim of exemption from taxation, the exemption law must be strictly construed and doubts resolved against such claim.

**5. Taxation ⬤⟶217—Texas Employers' Insurance Association held not exempt from state's taxing laws (Rev. St. 1925, art. 8308, § 1).**

The Texas Employers' Insurance Association, created by Rev. St. 1925, art. 8308, § 1, is not, in view of legislative intent as manifested by articles 4876–4918, exempt from the state's taxing laws.

**6. Taxation ⬤⟶217—Employers' Insurance Association held within statute relative to taxation of insurance companies though association is not private corporation; "governmental agency" (Rev. St. 1925, arts. 4754, 7150, and art. 8308, § 1).**

Rev. St. 1925, art. 8308, § 1, creating the Texas Employers' Insurance Association, brings the association within terms of article 4754 relative to the taxation of insurance companies, even though such association is not a private corporation, since the association is not a governmental agency within the terms of exemption statute, article 7150.

**7. Taxation ⬤⟶251—As regards liability to taxation, finding that Employers' Insurance Association's home office was in Dallas rather than in Austin held warranted by evidence (Rev. St. 1925, art. 8308, § 1).**

As regards liability for taxation, court's finding that the Texas Employers' Insurance Association's home office was in Dallas rather than in Austin *held* warranted by evidence, though by-laws of such association created by Rev. St. 1925, art. 8308, § 1, designated Austin as the home office.

**8. Municipal corporations ⬤⟶966(5)—Employers' Insurance Association's surplus existing at close of year and subject to be returned in dividends to subscribers held subject to tax lien allowed city where home office was located (Rev. St. 1925, art. 8308, § 1).**

Surplus of Texas Employers' Insurance Association, such association having been created by Rev. St. 1925, art. 8308, § 1, existing at close. of the year and subject to be returned in dividends to the subscribers *held* subject to the tax lien allowed city where home office was located.

Error from District Court, Dallas County; Louis Wilson, Judge.

Action by the City of Dallas against the Texas Employers' Insurance Association. Judgment for plaintiff, and defendant brings error. Affirmed.

Harry P. Lawther, of Dallas, and Chas. L. Black, of Austin, for plaintiff in error.

H. P. Kucera, W. Hughes Knight, and A. A. Long, Asst. City Attys., all of Dallas, for defendant in error.

JONES, C. J. The Texas Employers' Insurance Association by this appeal challenges the correctness of a judgment of a district court of Dallas county holding its personal property, as the value of same is determined by article 4754, R. S. 1925, taxable and awarding judgment in favor of the city of Dallas in the sum of $69,555.48 as taxes, interest, and penalties owing the city from the year 1917 to the year 1924, inclusive, with a foreclosure of the tax lien authorized by the city's charter.

For convenience, the parties will be styled as they were in the court below, the city of Dallas as plaintiff, and the Texas Employers' Insurance Association as defendant.

Defendant claims that its property, assessed by the city of Dallas for taxation for the said several years, is exempt from both state and municipal taxes, for the reason that it represents funds only that it was authorized to collect and apply to a public purpose; that it is a state agency, created by the Legislature for the sole purpose of collecting and distributing funds necessary to the administration of the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309). Defendant further contends that, in any event, such property cannot be assessed by plaintiff

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for the reason that the city of Austin is named as its home office in its by-laws, and that, if it should be held that it comes under the provisions of said article 4754 and that its property was subject for taxes, the power to assess and collect taxes is given exclusively to said city.

As suggested by counsel for defendant, the case presents an inquiry into (a) the nature and legal status of the defendant; (b) the legal nature of the fund that plaintiff is attempting to tax; (c) the validity of the tax assessment, if the property is held to be subject to taxation. The first two inquiries will be discussed in connection with each other, and the third in its order.

The Workmen's Compensation Law, enacted by the Legislature in 1913 and amended in many of its material provisions in 1917, made fundamental changes in the law as it had existed in reference to the liability of employers of labor for personal injuries to such employees, or for death resulting from such injuries, and the compensation afforded therefor to employees or their dependents. As to such liability, with certain designated exceptions, it abolished the common-law defenses of contributory negligence, assumed risk, and the negligence of fellow servants. To every employer of labor not within the designated exceptions, who met the conditions prescribed by the law, it abolished the cause of action that had theretofore existed in favor of the employee for personal injuries, or in favor of his beneficiaries, in case death resulted, and substituted therefor a compensation, based upon the amount of wages such employee had been earning at the time of his injury or death. This compensation was designed by the law to become immediately due and payable in the manner prescribed by the law on the happening of an injury to an employee, while engaged in the employer's work. The payment of this compensation is not to come directly from the employer, but is to come from compensation insurance, which the employer is required to have issued on his employees, as a condition to immunity from suit for damages arising from personal injuries to his employees.

In order that there would be an assurance that this plan of compensating injured employees would be made effective, there must be devised a means, both practical and dependable, to provide the funds necessary for the payment of such compensation. With this purpose in view, there was created by the Legislature, as an integral part of the Workmen's Compensation Law, the Texas Employers' Insurance Association, with power to issue policies of insurance covering personal injuries to, or death of, employees whose employers had qualified under the law. In order that the insurance association thus created might become operative at the earliest possible time, the law provided for its immediate organization by the state, and, to effectuate this purpose, the sum of $5,000 was appropriated from the general revenue to provide for the expense of its initial organization, and the Governor was empowered to appoint a board of directors from twelve employers of labor who had become subscribers to the insurance association thus created. These directors were to continue for twelve months, or until their successors were elected by the subscribers. Within twelve months, the subscribers were to meet, adopt by-laws, not inconsistent with the law creating the association, and elect the board of directors who should elect the officers of the association.

The constitutionality of the Workmen's Compensation Law was challenged soon after its enactment, and its validity established by the Supreme Court in the case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. Not only was the validity of the law established by that decision, but the legal status of the Texas Employers' Insurance Association was in some important particulars declared. One particular, in reference to the status of defendant, is that it is not a private corporation, but is an insurance association created as an agency to furnish a dependable plan for the collection of the funds necessary to meet the compensation provided for by the Workmen's Compensation Law, so that thereby both employer and employee, whose legal rights had been so radically changed by such law, at once would be secure in the new rights the law created for them. Defendant was declared by the act creating it a legal entity, vested not only with certain enumerated powers, but also with such "general corporate powers" as are necessary to the accomplishment of the purpose of its creation. Section 1 of article 8308, Revised Statutes 1925.

[1] We cannot agree with the contention of defendant that it is a governmental agency to perform governmental functions. The right to compensation to an employee for injuries received while engaged in the work of his employer is a private right. Previous to the enactment of this law, such right was enforced by the injured employee by a suit in court against his employer. Since the enactment of such law, this right is enforced against the insurance company with whom the employer carries the compensation insurance required by the said law. While the method of compensation is changed, the status of the right remains the same. It is not the state that insures an employee against the contingency of an injury while engaged in the work of his employer, but it is the employer, by voluntarily becoming a subscriber, either to the defendant or some other insurance company writing such insurance. By abolishing certain rights of employer and employee that existed at common law, and substituting in lieu thereof rights that are purely statutory, the state did not thereby take

over the enforcement of the newly created rights. By creating an insurance bureau, as an agency for the payment of the compensation allowed by the said law, the state did not thereby clothe such agency with governmental functions. Its operating funds are derived from the purely voluntary act of the employers of labor, and not from the public revenues levied and collected by the impelling power of government.

. Taxes are levied by the state under its sovereign power on the property of the citizen for governmental purposes only, and the money collected is owned by the state and used only for public purposes. No part of the money collected by defendant ever becomes public revenue. It is used to discharge the obligations incurred under the insurance policies issued by it, to pay the operating expenses, and if, at the end of any calendar year, there is a surplus beyond that required by the law to be maintained in order to write a nonassessable policy, such surplus is distributed in the form of dividends to the subscribers, who correspond to the stockholders of a private corporation.

Employers of labor are permitted under the law to take out their compensation insurance in any other company that is permitted by the state to write this class of insurance, and when such insurance has been taken out such employer becomes a "subscriber" in the same sense and with the same privileges as he would if his insurance had been issued by defendant. The rate to be charged for such insurance is fixed by the state insurance commission, and is required by law to be the same for all companies writing this class of insurance. With reference to private corporations writing this class of insurance, the rate is unquestionably fixed on a basis that will secure to the stockholders an adequate return for their investment. In the case of defendant, the subscribers are the stockholders, and the rate is also fixed on a basis that will insure them a return in dividends. That this has been done is demonstrated by a glance at the last annual report in this record. This report is of date December 31, 1923, and shows that for the ten years it had been in existence it had paid in dividends to subscribers the sum of $2,491,870.30. It also shows that on that date there was at hand the sum of $509,603.72 returnable to policyholders in the form of dividends. This report speaks eloquently of the management of the association's affairs, when considered as a private business. If, however, it should be considered as public business, the government would be subject to serious criticism in permitting the collection of such an excessive tax, for no sovereignty is justified in continuing to raise from year to year, by its taxing power, a sum of money so in excess of the amount necessary to discharge the purpose for which the levy is made.

The Legislature has not considered the

funds of this insurance association as public funds and, therefore, exempt from taxation. Chapter 10 of title 78, Revised Statutes 1925, creates a state insurance commission, to be composed of three persons, and prescribes the duties of such commission. Article 4876 to article 4905, inclusive, prescribe these duties with reference to fire insurance. Article 4906 to article 4918, inclusive, of said chapter, prescribe these duties in reference to insurance companies and associations writing workmen's compensation insurance in this state. Article 4906 levies a tax against all such companies of three-fifths of 1 per cent. of the gross premiums collected by such company or association during the preceding year for the purpose of defraying the expense of the commission in carrying out the provisions of this chapter in reference to such insurance companies, and such article further provides that:

"* * * Should there be an unexpended balance at the end of any year, it shall be transferred by the state treasurer to the credit of the general revenue of this state."

This tax is levied "in addition to all other taxes now imposed or which may hereafter be imposed by law." Article 4917 reads:

"Definitions—The words 'company' and 'association' used in this act mean the Texas Employers' Insurance Association, or any stock company, or any mutual company, or any reciprocal, or any interinsurance exchange, or Lloyd's association authorized to write workmen's compensation insurance in this state."

It thus appears that, under legislative construction, defendant's property is not considered exempt from taxation.

The only provision of the state Constitution that can apply to the claim of exemption from taxation in the instant case is section 2 of article 8, which declares that:

"The Legislature may, by general laws, exempt from taxation public property used for public purposes. * * *"

It will be noted that the Constitution does not exempt any property from taxation, but empowers the Legislature to exempt from taxation the property designated by said section. Exercising this power by the enactment of article 7150, the Legislature exempted from taxation—

"* * * all property, whether real or personal, belonging exclusively to this state, or any political subdivision thereof, or the United States."

[2] This statute must be construed in the light of the constitutional grant of power, and is and was so construed by our Supreme Court in the case of St. Edwards' College v. Morris, 82 Tex. 1, 17 S. W. 512, in which it is declared that, to bring property within this exemption—

"* * * it is believed that the ownership should be in the state or some of its municipal

subdivisons, and it may be that its use would have to be not only under their control but for a purpose for which the state or such municipal subdivisions are authorized to use property held by them for the benefit of the public."

In the case of the corporation of Corporation San Felipe De Austin v. State, 111 Tex. 108, 229 S. W. 845, it is held that property owned by the state or its municipality, in order to be exempt, must be devoted to a public use. The property here sought to be taxed does not meet either provisions of the test laid down by these cases for determining exemption, in that, as we have seen, it is not owned by the state nor devoted to a public purpose.

[3, 4] Consideration must be given to the fact that the Legislature has manifested a clear intention to place the Texas Employers' Insurance Association precisely on the footing as that of any other company writing compensation insurance. It must make the same character of annual report as is required from the other companies, and must charge the same rate of insurance that they are permitted to charge. It is governed by the same rules in paying dividends to its subscribers, and is subjected to the same tax to pay the expenses of the insurance commission as the other companies are subjected. To hold that this insurance association is exempt from all taxes, because it was created by an act of the Legislature, and at the same time tax other companies on this class of their business, would allow a discrimination in favor of defendant contrary to the unmistakable intention of the Legislature. The burden is on the one claiming exemption from taxation to bring himself clearly within the exemption statutes. In considering a claim of exemption from taxation, the exemption law must be strictly construed and doubts resolved against such claim. Trinity Methodist Episcopal Church v. City of San Antonio (Tex. Civ. App.) 201 S. W. 669; Santa Rosa Infirmary v. City of San Antonio (Tex. Com. App.) 259 S. W. 926; Millers' Mutual Fire Insurance Co. v. City of Austin (Tex. Civ. App.) 210 S. W. 825.

[5] In consideration of all the matters above discussed, it necessarily follows that the trial court did not err in holding that defendant is not exempt from the taxing laws of this state.

It is strenuously insisted that, if subject to the taxing laws of this state, the assessment of its property cannot be made under the provisions of article 4754, Revised Statutes 1925, which defines a special and arbitrary method of making an assessment, because (a) this statute by its terms only applies to private domestic corporations, and (b) because, under such statute, the situs of personal property for taxation must be placed at the home office of the corporation, and that, under the by-laws of this association, the home office is fixed at the city of Austin.

5 S.W.(2d)—39½

Article 4754, Revised Statutes 1925, reads as follows:

"Insurance companies incorporated under the laws of this state shall hereafter be required to render for state, county and municipal taxation all of their real estate as other real estate is rendered. All personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner: From the total valuation of its assets shall be deducted the reserve being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insurance companies shall not be required to pay any occupation or gross receipt tax."

It is true that the statute, in designating those companies that are included within its provisions, uses the expression "insurance companies incorporated under the laws of this state." We think the words employed to designate the insurance companies coming under the purview of the statute should not be so technically construed as to their meaning, and that it was intended by such language to include any company or association that is brought into existence under the laws of the state of Texas, regardless of whether it be a private corporation or some other character of association. But, however this may be, section 1 of article 8308, the article creating defendant, declares that:

It "is hereby created a body corporate with the powers provided in this law and with all general corporate powers incident thereto."

[6] This legislative designation is sufficient, in any event, to bring it within the legislative designation of article 4754, notwithstanding that defendant is not a private corporation. This method of assessing property under article 4754 has been construed to be a valid exercise of legislative power, and to compel assessment of all personal property of such insurance companies at the home office, regardless of where such property is located. Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778; American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S. W. 1019.

[7] Is the situs of the personal property of the Texas Employers' Insurance Association at the city of Dallas or the city of Austin? The undisputed evidence shows that defendant maintains the character of office in Dallas that is usually termed a "home office," and does not maintain such an office in the city of Austin, though its by-laws designate the city of Austin as its home office. In the former city is the office of the executive heads of the association, and in that city is transacted all such business of the association as is usually transacted at a home office. In view of this fact, the trial court found as a fact that the

home office was in the city of Dallas, and we are of the opinion that such finding is warranted by the undisputed facts in this case. The undisputed evidence shows that the method prescribed for determining the personal property of defendant was followed as prescribed by the statute under consideration, and that the property assessed was valued as other property is valued by the city of Dallas for tax assessment.

[8] The fund made subject to taxation is the surplus that existed at the close of each year for which taxes have been levied, and is subject to be returned in dividends to subscribers. We can see no reason why it should not be subjected to the tax lien given the plaintiff by law. The annual reports show that defendant has set aside for taxes, and now has in its treasury, to meet this contingency, a sum of money more than sufficient to discharge this judgment. The contention of defendant in this respect is overruled. We are, therefore, of the opinion that this case should be affirmed.

In affirming the judgment of the trial court, we have not overlooked the decision of the Court of Civil Appeals at Amarillo in the case of the City of Dallas v. Texas Employers' Insurance Association, 245 S. W. 946, in which a different conclusion is announced by that court. We have a very high regard for the opinions of that court, and especially of the learned judge who rendered that opinion, and regret that we feel constrained to pronounce a different conclusion in reference to the status of the property of the Texas Employers' Insurance Association. The Supreme Court granted a writ of error in that case, but, before it was considered on its merits, the Texas Employers' Insurance Association presented to that court an affidavit showing that it had discharged the entire claim of taxes, interest, and penalties, for which reason the writ of error was dismissed. This is shown by a memorandum opinion, 265 S. W. 1113.

Affirmed.